## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **CURTIS J. TERRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | |
| **THE NATIONAL RAILROAD** | ) | |
| **PASSNEGER CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT

Plaintiff Curtis J. Terry ("Mr. Terry" or "Plaintiff"), by and through his attorneys, files this action and alleges as follows:

### NATURE OF ACTION

1.      This is an action against The National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak" or "Defendant") for its unlawful discrimination and retaliation on the basis of his race, African American, and color in violation of Title VII of the Civil Rights Act of 1964**,** 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), as well as 42 U.S.C. § 1981 ("Section 1981").

### PARTIES

2.      Plaintiff is a black, African American individual who resides at 8018 South Luella, Chicago, Illinois 60617. Plaintiff is an employee of the Defendant, within the meaning of Section 1981 and Title VII.

3.      Defendant operates a railroad system throughout the United States, and maintains large regional offices and operations in Chicago, Illinois.  Those offices are located at 225 South Canal Street, Chicago, Illinois 60606.

4.      Defendant is an "employer" within the meaning of Section 1981 and Title VII.

**JURISDICTION AND VENUE**

5.      This Court has subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 20003-5(f) because it arises under the laws of the United States and Plaintiff seeks redress for violations of civil rights.

6.      This Court may properly maintain personal jurisdiction over Defendant who maintains significant operations in this District, and is also the location where Plaintiff is employed by the Defendant.

7.      Venue is appropriate because some part of the actions at issue in this Complaint occurred in this District.

**EXHAUSTION**

8.      On or about October 1, 2020, Plaintiff filed a charge of discrimination against Defendant with the EEOC alleging discrimination based on race, color, and retaliation.

9.      On or about October 29, 2021, Plaintiff received a notice of right to sue letter.  The letter is attached hereto as Exhibit 1.

10.      Plaintiff initiated this action, within 90 days of receiving the aforementioned notice of right to sue letter.

**FACTS**

11.       Mr. Terry has significant experience working for railroads.  Prior to his working with the Defendant, Mr. Terry has spent more than two decades working with railroads performing all types of jobs including but not limited to positions such as brakeman, conductor, yardmaster, trainmaster, senior trainmaster, terminal manager, terminal coordinator, assistant superintendent, and train director.

12.     In 2017, Mr. Terry became employed by the Defendant in the position of train director in Chicago.

13.     Since that time, Mr. Terry had successfully performed his job duties and responsibilities as train director.

14.     Despite his experience and performance, Mr. Terry, as well as other similarly situated black and African American individuals working for Defendant, was the subject to arbitrary and inconsistent application of disciplinary policies by the Defendant at least since 2019 and continuing to the present.  Such inconsistent application created a hostile work environment towards black and African American individuals.

15.     By way of example only, in a continuing pattern of inconsistent and improper application of discipline, Mr. Terry was written up and suspended for two weeks without pay for allegedly sleeping on the job in 2019, which was false.  That improper suspension has continued to be used against Mr. Terry to this day.  Yet, just a few months ago, when a Caucasian train director fell asleep on the job, no investigation or disciplinary action was taken in regards to that situation.

16.     Another example, in 2020, Mr. Terry was disciplined for alleged violation of a policy prohibiting use of personal phone.  Such actions however have been continually engaged in by Caucasian train directors, none of whom were disciplined for such actions.

17.     Indeed, while Mr. Terry has been the subject of various other disciplinary actions, other Caucasian train directors and others engaged in the same conduct were not disciplined or investigated.

18.     Again, by way of example only, in 2021, Mr. Terry had objects thrown at him by a white train director.  Mr. Terry reported the incident, and not only was no disciplinary action taken, there was no investigation into the incident.

19.     Another example of the hostile work environment is evidenced by the fact that policies are discussed and transmitted between Caucasian management personnel to Caucasian train directors, but not disseminated to black and African American train directors.  Then, white supervisors used such policies as a basis for discipline against Mr. Terry despite not being notified of the existence of a policy.

20.     Also, as a part of the hostile environment, Mr. Terry has been the victim of various forms of racial harassment on a continual basis based upon his race and color.  For example, a white train director has and continues to violate company policy, including but not limited to, by making harassing and improper racially charged comments to Mr. Terry and other black and/or African Americans employees.  Despite this conduct, this white train director receives favorable treatment and no discipline.  Such activities have been condoned and encouraged by immediate supervisors who are white, and all without disciplinary action.

21.     The inconsistent application of disciplinary policies and discriminatory practices has also been utilized to preclude the advancement and promotion of Mr. Terry and other African Americans while other less qualified white individuals have been promoted.

22.     Since at least 2019, Mr. Terry has continually applied for a promotion, as have other black and African American individuals, from the train director position.  Mr. Terry applied for positions including trainmaster, manager of train operations, assistant supervisor, and other promotions since that date, including several in 2020 and 2021. Mr. Terry is qualified for promotions, as are other black and African American train directors. However, for that time period,

while Mr. Terry, and other African American and black train directors have applied for promotions, none of them have received those positions, but instead those positions have been filled with less qualified Caucasian individuals.

23.    Mr. Terry, as well as the other black and African American train directors, were not promoted because of their race and color.

24.    Mr. Terry has complained to numerous levels of supervisors since at least 2019 and continuing through 2021 about many of these issues and the discriminatory practices discussed above but there has never been any resolution or action to address those concerns.  Indeed, his complaints were often just tabled and not addressed or investigated to a conclusion and/or reviewed in only cursory fashion.

25.    Instead, in retaliation for Mr. Terry raising such complaints, white supervisors took steps to delay any action and limit involvement and review.  In so doing, the discriminatory conduct was permitted to continue and intensify, and the hostile work environment remained both hidden and immune from criticism and change, and allowed to continue.

26.    Furthermore, while Mr. Terry has been complaining about the disciplinary actions and lack of response to his concerns, he has continued to have actions taken against him by other white train directors, and has continued to be subject to a harassing environment with no promotion.

27.    Such retaliation reached a crescendo on January 11, 2022 as Mr. Terry was deprived of certain rights and protections that are provided for under the Defendant's written policies associated after reporting a work incident, with Defendant taking further adverse employment actions against him including but not limited to job and pay restrictions and other limitation which make the circumstances of his employment even more hostile and intolerable.

## COUNT I
## RACE DISCRIMINATION UNDER SECTION 1981

28.     Mr. Terry realleges and restates his allegations as set forth above in Paragraphs 1 through 27.

29.     Similarly situated Caucasian train directors who violated policies and procedures were not investigated and/or disciplined, and if they were, the discipline imposed was less severe than upon Mr. Terry and other black and African American train directors.

30.     Plaintiff was treated differently and harshly in regards to discipline imposed upon him, and as well as how that discipline was used against Plaintiff.  Mr. Terry was deprived of protections under policies and procedures which were provided to other workers who are Caucasian.  Such treatment, and the hostile work environment that was created, was based on Plaintiff's race and color,

31.     During the course of the Plaintiff's employment with the Defendant, both black and white employees were employed as train directors.

32.     Mr. Terry and other black and African American train directors applied for promotions within Amtrak.

33.     The Defendant did not select Mr. Terry or any of the black and African American train directors for promotions that they applied from at least 2019 to date.

34.     Instead, less qualified white individuals were provided these promotions.

35.     The Plaintiff was not selected for the promotion because he is black and African American.

36.     By its imposition of a disciplinary system that treats African American and black individuals in the position of Plaintiff differently, as well as its failure to promote the Plaintiff, the Defendant violated Section 1981.

37.     Mr. Terry has lost tens of thousands of dollars of salary per year, as well as other benefits.  Further, Mr. Terry has been damaged through emotional distress, as well as through pain and suffering from the actions taken by the Defendant.

**COUNT II**
**RACE DISCRIMINATION UNDER TITLE VII**

38.     Mr. Terry realleges and restates his allegations as set forth above in Paragraphs 1 through 27.

39.     Mr. Terry is a part of a protected class, as are other black and African American train directors.

40.     Mr. Terry has suffered adverse employment actions in numerous ways which have included the improper and unfair application of disciplinary policies, which led to his treatment which was different and harsher than similarly situated Caucasian employees.  Mr. Terry was deprived of protections under policies and procedures which were provided to other workers who are Caucasian.  Such treatment, and the hostile work environment that was created, was based on Plaintiff's race and color.

41.     Similarly situated Caucasian employees which violated policies and procedures were not investigated and/or disciplined, and if they were, the discipline was much less that what was imposed upon African Americans and black employees.

42.     Mr. Terry, as other African American and black train directors, has also been denied promotions, the denial of which has been based on his race and color.   Less qualified Caucasian individuals were promoted to positions above train director.

## COUNT III
## RETALIATION (SECTOIN 1981)

43.    Plaintiff reasserts and realleges the allegations set forth above in Paragraphs 1 through 42.

44.     Plaintiff engaged in protected activity by complaining about the discipline he was receiving, the failure to discipline Caucasian train directors, the discriminatory basis associated with these actions, the slow pace of investigation into his complaints, as well as a failure to receive a promotion.  Indeed, in 2020 and 2021, he repeatedly complained about his treatment which was based on his race and color.

45.    Not only were those complaints not investigated on a timely basis, many of the issues were largely ignored as a form of retaliatory conduct.

46.    Mr. Terry's complaints led to greater and further disciplinary actions against Mr. Terry.

47.    As part of the hostile and retaliatory work environment, Mr. Terry was the subject of retaliatory acts just a few days ago through the Defendant's failure to provide him the rights and protections under Defendant's policies and procedures that Mr. Terry was entitled to have after a workplace incident occurred.  Rather than providing those protections, the Defendant withheld those protections as acts of retaliation, and made the work environment more difficult and hostile towards Mr. Terry, taking adverse actions including but not limited to, *inter alia,* placing job and pay restrictions upon him.

48.    Plaintiff's complaints are causally related to the adverse and retaliatory conduct and actions taken against him.

## COUNT IV
## RETALIATION (TITLE VII)

49.     Plaintiff reasserts and realleges the allegations set forth above in Paragraphs 1 through 48.

50.     Plaintiff engaged in protected activity by complaining about the discipline he was receiving, the failure to discipline Caucasian train directors, the discriminatory basis associated with these, the slow pace of investigation into his complaints. as well as the failure to receive a promotion.  Indeed, in 2020 and 2021, he repeatedly complained about his treatment which was based on his race and color.

51.     Not only were those complaints not investigated on a timely basis, many of the issues were largely ignored.

52.     Instead, Mr. Terry's complaints led to greater and further disciplinary actions against Mr. Terry.

53.     As part of this hostile and retaliatory environment, Mr. Terry was the subject of retaliatory acts against just a few days ago through Defendant's failure to provide him the rights and protections under Defendant's policies and procedures that Mr. Terry was entitled to have after a workplace incident occurred.  Rather than providing those protections, the Defendant withheld the protections as acts of retaliation and made the work environment more difficult and hostile towards Mr. Terry, taking adverse actions including but not limited to, *inter alia,* placing job and pay restrictions upon him.

54.     Plaintiff's complaints are causally related to the adverse and retaliatory conduct and actions taken against him.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests this Court grant the following relief:

a.      Entry of judgment in favor of Plaintiff against Defendant;

b.      Back pay;

c.      Compensatory damages;

d.      Damages for pain, suffering and emotional distress;

e.      Punitive Damages;

f.      Pre-Judgment interest;

g.      Attorneys' fees and costs; and

h.      Promotion to a position as Manager of Train Operations or other position that

represents a promotion from Plaintiff's position as train director.

**PLAINTIFF DEMANDS TRIAL BY JURY
FOR ALL CAUSES OF ACTION TRIABLE BY JURY**


Dated: January 26, 2022                               Respectfully submitted,

                                                     CURTIS J. TERRY

                                                     By: /s/ Michael Rachlis
                                                     One of his attorneys
                                                     Michael Rachlis (IL Bar No. 6203745)
                                                     Rachlis Duff & Peel, LLC
                                                     542 South Dearborn Street, Suite 900
                                                     Chicago, Illinois 60605
                                                     (312) 733-3950 (gen.)
                                                     (312) 733-3952 (fax)
                                                     mrachlis@rdaplaw.net

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Curtis Terry<br>c/o Michael Rachlis, Attorney<br>RACHLIS DUFF & PEEL, LLC<br>542 South Dearborn Street, Suite 900<br>Chicago, IL 60605<br>542 South Dearborn Street, Suite 900 | From: | Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|---|---|

| | ☐ | *On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2021-00007** | **Kara Mitchell,**<br>**Investigator** | **(312) 872-9702** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| ☒ | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| ☒ | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman/eh*                          10/29/2021

Enclosures(s)                          **Julianne Bowman,**                          *(Date Issued)*
**District Director**

cc:

> **AMTRAK**
> **c/o Dorothy Young, Shareholder**
> **Littler Mendelson, P.C. - GSC**
> **2301 McGee Street, 8th Floor**
> **Kansas City, MO 64108**

> **Exhibit**
> **1**

Enclosure with EEOC
Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*